**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **AUTO-OWNERS INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. _____** |
| | ) | |
| **FELON R. WILSON;** | ) | |
| **LUXE HOMES AND DESIGN, INC.,** | ) | |
| **JENNY BLALOCK, and JAMES BLALOCK.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT**

COMES NOW Plaintiff Auto-Owners Insurance Company ("Auto-Owners"), by and through counsel, and for its Complaint ("Complaint") would show unto the Court as follows:

1.    Auto-Owners is a Michigan corporation with its principal place of business in Lansing, Michigan.

2.    Defendant Felon R. Wilson ("Wilson") is a citizen and resident of Knoxville, Knox County, Tennessee. He may be served with a summons and a copy of the Complaint at 7203 Iron Duke Way, Knoxville, Tennessee 37919.

3.    Upon information and belief, Wilson lives at and occupies the property at 7203 Iron Duke Way, Knoxville, Tennessee 37919 as a residence.

4.    Defendant Luxe Homes and Design Inc. ("Luxe Homes") is a Tennessee corporation with its principal place of business at 1122 Anthem View Lane, Knoxville, Knox County, Tennessee. It may be served with a summons and a copy of the Complaint through its registered agent James M. Blalock at 8336 Martin Mill Pike, Knoxville, Tennessee 37920-9536.

5.    Defendant Jenny Blalock is a citizen and resident of Knoxville, Knox County, Tennessee, and she may be served with a summons and a copy of the Complaint at 1122 Anthem View Lane, Knoxville, Tennessee 37922-4277.

6.    Defendant James Blalock is a citizen and resident of Knoxville, Knox County, Tennessee, and he may be served with a summons and a copy of the Complaint at 8336 Martin Mill Pike, Knoxville, Tennessee 37920-9536.

## JURISDICTION AND VENUE

7.    Defendants are subject to the jurisdiction of this Court as they all reside in Knox County, Tennessee, within the Eastern District of Tennessee.

8.    This matter arises out of the construction of a home at 7203 Iron Duke Way in Knox County, Tennessee (the "Property").

9.    This action is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.  Auto-Owners seeks a declaratory judgment concerning its rights and obligations under policies of insurance issued to Luxe Homes.

10.    This action concerns an actual case and controversy over whether Auto-Owners has a duty to defend or indemnify Luxe Homes, Jenny Blalock, or James Blalock pursuant to insurance policies issued to Luxe Homes.

11.    Venue is proper in this district and division because the policies of insurance issued by Auto-Owners to Luxe Homes were for Luxe Homes' construction business, and Luxe Homes maintains its principal place of business in Knox County, Tennessee.  The construction at issue was performed in Knox County, Tennessee.  Moreover, the underlying civil action in Knox County Chancery Court filed by Wilson against Luxe Homes, Jenny Blalock, James Blalock, and non-party Plantation Reclaimed, Inc. ("Underlying Defendants") relates to the construction of the Property in Knox County, Tennessee.

2

12. Under 28 U.S.C. § 123(a)(1), the Northern Division of Tennessee is the proper venue for actions arising out of Knox County, Tennessee.

13. Venue is proper in this district and division under 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claim occurred in Knox County, Tennessee and all defendants are residents in the Eastern District of Tennessee.

14. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

15. Plaintiff is a citizen of Michigan, and Defendants are citizens and residents of Tennessee. Complete diversity of citizenship exists.

16. In this Declaratory Judgment action, Auto-Owners seeks a declaration that it has no duty to defend or indemnify Luxe Homes, Jenny Blalock, or James Blalock in a lawsuit brought against them by Wilson.

17. The First Amended Complaint ("FAC") filed by Wilson in the underlying lawsuit alleges that he entered into a fixed fee construction agreement with "Defendant Jenny Blalock of Luxe Homes Designs for the construction of a home." *See **Exhibit 1*** hereto, FAC, ¶ 7.

18. Wilson alleges in the FAC that Underlying Defendants breached the fixed fee construction contract, breached both express and implied warranties, committed negligence, violated the Tennessee Consumer Protection Act, and committed negligent and fraudulent misrepresentations. *See generally id*., ¶¶ 33-79. Additionally, Wilson seeks to recover damages under theories of quantum meruit, conversion, punitive damages, and by piercing the corporate veil of Luxe Homes and non-party Plantation Reclaimed, Inc. *See generally id*., ¶¶ 80-96.

3

19.     In the FAC, Wilson alleges damages "not less than Four Hundred Thousand and 00/100 Dollars ($400,000.00)" as a result of the tortious acts of Underlying Defendants.  *See id.*, ¶¶ 58, 79, 86, *Prayer for Relief*.

20.     The claims brought by Wilson against Underlying Defendants and the relief sought by Wilson exceeds the minimum amount in controversy requirement of $75,000.00 required for this Court to exercise jurisdiction over this matter.

21.     The policy limits per occurrence of $1,000,000.00 for the policies of insurance issued by Auto-Owners to Luxe Homes for commercial general liability coverage exceed the minimum amount in controversy requirement of $75,000.00 required for this Court to exercise jurisdiction over this matter.

22.     The amount in controversy in this declaratory judgment action exceeds the sum or value of $75,000.00 exclusive of interest and costs.

23.     This Court has personal jurisdiction over Auto-Owners, Wilson, Luxe Homes, Jenny Blalock, and James Blalock.

## SPECIFIC ALLEGATIONS

24.     Auto-Owners issued policies of insurance to Luxe Homes.

25.     The policies issued to Luxe Homes are commercial general liability policies (collectively, "the Policies").

26.     The first Policy was issued in February of 2015 ("the 2015 Policy").  The policy number for the 2015 Policy is 062319-03694388-15.

27.     The 2015 Policy had an effective date of February 20, 2015 to February 20, 2016. A certified copy of the 2015 Policy is attached hereto as ***Exhibit 2*** and is incorporated into this Complaint by reference.

4

28.     A second policy was issued to Luxe Homes in April of 2016 ("the 2016 Policy").

The policy number for the 2016 Policy is 062319-03694388-16.

29.     The 2016 Policy had an effective date of February 20, 2016 to February 20, 2017.

A certified copy of the 2016 Policy is attached hereto as ***Exhibit 3*** and is incorporated into this

Complaint by reference.

30.     The Policies contain the following language as part of the insuring agreement:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I – COVERAGES**

**COVERAGE A, BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**    **Insuring Agreement**

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. But:

            **(1)**    The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and

            **(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

        **b.**    This insurance applies to "bodily injury" and "property damage" only if:

5

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**2.** **Exclusions**

This insurance does not apply to:

**a.** **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.** **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligation to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. However, if the insurance under this policy does not apply to the

6

liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

**(2)** That the insured would have in the absence of the contract or agreement.

**j.    Damage to Property**

"Property damage" to:

(6) That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(7) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(4)**, **(5)**, **(6)** and **(7)** of this exclusion do not apply to liability assumed under a side-track agreement.

Paragraph **(7)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**l.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of;

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

7

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use or other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

## COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY

**1.** **Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal injury" and "advertising injury" only if:

**(1)** The "personal injury" or "advertising injury" is caused by an offense arising out of your business; and

**(2)** The offense causing the "personal injury" or "advertising injury" was committed in the

8

"coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to "personal injury" or "advertising injury"

a. **Knowing Violation Of Rights Of Another Or Expected Or Intended Injury**

(1) Caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury"; or

(2) Expected or intended by any insured. This exclusion. **a.(2)**, does not apply to "personal injury".

e. **Contractual Liability**

For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach of Contract**

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

Arising out of the infringement of copyright, patent, "trademark", trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement" of copyright, "trade dress" or slogan.

k. **Electronic Chatrooms Or Bulletin Boards**

9

Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control for any purpose.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purpose of attracting customers or supporters is considered an advertisement;

2. "Advertising injury" means injury arising out of one or more of the following offenses:

   **a.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in your "advertisement";

   **b.** Oral or written publication, in any manner, of material that violates a person's right of privacy in your "advertisement";

   **c.** The use of another's advertising idea in your "advertisement"; or

10

**d.** Infringing upon another's copyright, "trade dress" or slogan in your "advertisement".

**4.** "Bodily injury" means bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time.

**14.** "Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**15.** "Personal injury" means other than "bodily injury" arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy; or

**f.** Discrimination, humiliation, sexual harassment and any violation of civil rights caused by such discrimination, humiliation or sexual harassment.

**18.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

11

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

23. "Trademark" means any registered or unregistered word, name, symbol, sign, device or any combination thereof used to identify or distinguish a person's or organization's goods, products or services from those of others and to indicate or identify the origin or source of such goods, products or services, even if the origin or source is unknown. "Trademark" includes registered "trade dress" and "trade dress" which is used with or incorporates any "trademark".

24. "Trade dress" means the unregistered and non-functional distinctive packaging, appearance, image, design, color scheme or shape or combination thereof used to identify or distinguish a person's or organization's goods, products or services from those of others and to indicate or identify the origin or source of such goods, products or services, even if the source is unknown. "Trade dress" does not include:

   a. Registered "trade dress";

   b. "Trademark"; or

   c. "Trade dress" which is used with or incorporates any "trademark".

27. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

12

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)**    The providing of or failure to provide warnings or instructions.

31.    The 2015 Policy defines "Products-completed operations hazard" as follows:

**17.**    "Products-completed operations hazard";

    **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)**    Products that are still in your physical possession; or

    **(2)**    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)**    When all of the work called for in your contract has been completed.

    **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.**    Does not include "bodily injury" or "property damage" arising out of:

13

> **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;
>
> **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or
>
> **(3)** Products or operations for which the classification, shown in the Declarations, states that products-completed operations are included.

32.     The 2016 Policy defines "Products-completed operations hazard" as follows:

> **17.** "Products-completed operations hazard";
>
> **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
>> **(1)** Products that are still in your physical possession; or
>>
>> **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>>
>>> **(a)** When all of the work called for in your contract has been completed.
>>>
>>> **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>>>
>>> **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

14

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

        **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

33.    The 2016 Policy contains the following endorsement:

**EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**    The following is added to Paragraph **2. Exclusion Section I – Coverage A – Bodily Injury and Property Damage Liability:**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information and Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of non-public information; or

**(2)** The loss of, loss of use, damage to, corruption of, inability to access, or inability to manipulate electronic data.

15

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury."

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions of Section I – Coverage B – Personal Injury And Advertising Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal injury" and "advertising injury" arising out of or any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost, or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

All other policy terms and conditions apply.

34.     On September 2, 2016, Wilson sued Underlying Defendants in a civil action in the Chancery Court for Knox County, Tennessee styled *Felon R. Wilson, individually v. Luxe Homes and Design, Inc., a Tennessee corporation, Plantation Reclaimed, Inc., a Tennessee corporation, Jenny Blalock, individually, and James Blalock, individually*, Knox County Chancery Court, No. 192292-3 (the "Action").

16

35.     A copy of the original Complaint filed in the Action is attached hereto as **_Exhibit 4_** and is incorporated into this Complaint by reference.

36.     On May 8, 2017, Wilson filed the FAC, in the Action.

37.     The FAC filed in the Action alleges that on or about June 1, 2015, Wilson entered into a Fixed Fee Construction Agreement (the "Agreement") with "Jenny Blalock of Luxe Home Designs" for the construction of a home.   *See **Exhibit 1,*** FAC ¶ 7.

38.     The FAC filed in the Action alleges that the Agreement stated that the estimated completion date for the home would be January 30, 2016.  *See id.*

39.     The FAC filed in the Action alleges that the defendants were aware that time was of the essence for Wilson.  *See id.*

40.     The FAC filed in the Action alleges that under the Agreement, Defendant "Jenny Blalock of Luxe Home Designs" contracted to build Wilson a home at 7203 Iron Duke Way, Knoxville, Tennessee 37919. *See id.*

41.     The FAC filed in the Action alleges that Wilson repeatedly requested a copy of the fully executed Agreement from Jenny Blalock but had not received a copy.  *See id.*, ¶ 8.

42.     The FAC filed in the Action alleges that the signatories to the Agreement were Jenny Blalock and Wilson.  *See id.*, ¶ 9.

43.     The FAC filed in this Action alleges that the Agreement was drafted by Luxe Homes or its attorney.  *See id.*, ¶ 10.

44.     The FAC filed in the Action alleges that Jenny Blalock communicated and provided services to Wilson through Luxe Homes and non-party Plantation Reclaimed, Inc.  *See id.*, ¶ 11.

45.     The FAC filed in the Action alleges that Underlying Defendants failed to properly communicate with and oversee subcontractors and failed to demonstrate a basic understanding of certain construction materials and processes. *See id.*, ¶ 12.

46.     The FAC filed in the Action alleges that Underlying Defendants did not provide materials as specified in the Agreement and instead used cheaper materials or required additional funds from Wilson to construct properly or as properly contemplated by the parties. *See id.*, ¶ 13.

47.     The FAC filed in the Action alleges that Underlying Defendants deviated from the Agreement, used "cheap construction materials or processes, and/or used construction materials or processes unapproved by the Plaintiff and demanded that Plaintiff pay amounts above the fixed fee in the [Agreement] to correct such deviations or to replace the cheap or unapproved construction materials or processes." *See id.*, ¶ 14.

48.     The FAC filed in the Action alleges that Underlying Defendants demanded Wilson pay amounts above the fixed fee set in Agreement due to Underlying Defendants' failure to include such amounts in the Agreement or to cover work commenced without Wilson's approval. *See id.*, ¶ 15.

49.     The FAC filed in the Action alleges that Underlying Defendants failed to adhere to neighborhood covenants and properly calculate landscaping costs in the Agreement price, requiring Wilson to hire third party contractors and incur additional expenses. *See id.*, ¶ 16.

50.     The FAC filed in the Action alleges that Jenny Blalock failed to provide financial information necessary for Wilson's tax returns without numerous requests by Wilson. Further, the FAC filed in the Action alleges that the financial information ultimately provided by Jenny Blalock was incomplete. *See id.*, ¶ 17.

51.     The FAC filed in the Action alleges that Underlying Defendants used unqualified contractors for substantial portions of the house, including but not limited to, Jenny Blalock and James Blalock functioning as unqualified contractors by building portions of the house themselves. *See id.*, ¶ 18.

52.     The FAC filed in the Action alleges that Underlying Defendants failed to use licensed individuals to perform all work on the Property as "outlined by law." *See id.*, ¶ 19.

53.     The FAC filed in the Action alleges that Underlying Defendants maintained the construction site of the Property in a sloppy manner, resulting in complaints from neighbors and the neighborhood developer. *See id.*, ¶ 20.

54.     The FAC filed in the Action alleges that "Defendant tried to convince Plaintiff to substitute agreed-upon materials with cheap building supplies or installed cheap and poor quality building materials without seeking approval of Plaintiff." *See id.*, ¶ 21.

55.     The FAC filed in the Action alleges that Defendant misrepresented materials to be used in construction of Property and then demanded additional funds from Wilson to meet terms of the Agreement as to construction materials. *See id.*, ¶ 22.

56.     The FAC filed in the Action alleges that Jenny Blalock agreed to reduce certain amounts that she claimed were owed to her by Wilson in exchange for early payment. *See id.*, ¶ 23.

57.     The FAC filed in the Action alleges that Wilson's attorney sent a notice of breach of contract to Underlying Defendants on June 13, 2016. *See id.*, ¶ 24.

58.     The FAC filed in the Action alleges that Wilson has received no response to the notice of breach of contract from Underlying Defendants. *See id.*, ¶ 25.

59. The FAC filed in the Action alleges that Wilson and Underlying Defendants agreed that no photographs of the Property were to be used for any advertising or promotion. *See id.*, ¶ 26.

60. The FAC filed in the Action alleges that Underlying Defendants then used photographs of the Property in paid advertisements, third party showrooms, social media, and on the website of non-party Plantation Reclaimed, Inc. *See id.*

61. The FAC filed in the Action alleges that on July 1, 2016, "at Defendant's direction, commercial photographer Beth Fellhoelter took pictures of the exterior of Plaintiff's home." *See id.*, ¶ 27.

62. The FAC filed in the Action alleges that on November 8, 2016, Underlying Defendants uploaded twenty photographs of the Property to the Facebook page of non-party, Plantation Reclaimed. Further, the FAC filed in the Action alleges that this event took place approximately one day after Jenny Blalock submitted her response to Wilson's complaint filed with the Tennessee Contracting Licensing Board. *See id.*, ¶ 28.

63. The FAC filed in the Action alleges that Underlying Defendants failed to complete construction of the Property even after receipt of full payment by Wilson. Further, the FAC filed in the Action alleges that Underlying Defendants failed to respond to requests to fix and/or complete construction of the Property, including notices from the City of Knoxville. *See id.*, ¶ 29.

64. The FAC filed in the Action alleges that there "was never a walkthrough or closing on the house." *See id.*, ¶ 30.

65. The FAC filed in the Action alleges that Underlying Defendants "failed to respond and refused to remedy the majority of such deficiencies, including failure to complete punch lists." *See id.*, ¶ 31.

66. The FAC filed in the Action alleges that Wilson has discovered defects with the Property with such defects arising due to the construction methods, attempts at repair, and allegedly discovered by Wilson are listed in Paragraph 32 of the FAC in subparagraphs a. through xx. on pages 5 through 11 of the FAC. The allegations are incorporated into this Complaint by reference as stated verbatim in the FAC.

67. The FAC filed in the Action brings claims against Underlying Defendants for breach of express and implied warranties, negligent and fraudulent misrepresentation, negligence, violation of the Tennessee Consumer Protection Act, and breach of contract. *See generally id.*, ¶¶ 33-79.

68. The FAC filed in the Action alleges that the Underlying Defendants breached express warranties as set forth in Paragraph 34 of the FAC, subparagraphs a. through m. These allegations are incorporated into this Complaint by reference as stated verbatim in the FAC.

69. The FAC filed in the Action alleges that the Underlying Defendants breached the implied warranties of good workmanship and habitability and fitness through alleged improper construction and use of poor quality materials. *See id.*, ¶¶ 36-37.

70. The FAC filed in the Action alleges that the Underlying Defendants made representations that they "were experienced as general contractors, Defendants were one of the finest custom homebuilders in Knoxville, and Defendants build only high-end and high quality custom construction." *See id.*, ¶ 40.

71.     The FAC filed in the Action alleges that the Underlying Defendants "represented to the Plaintiff that Defendants build only high-end homes and used the best subcontractors and materials.  In addition, Defendants represented to the Plaintiff that Defendants' homes always appraise for more after completion than the customers' purchase price.  Further, Defendants['] stated that they had expertise in the management of money, budgets and meeting construction deadlines." *See id.*

72.     The FAC filed in the Action alleges that the Underlying Defendants "stated that they frequently build custom-houses within customers' budgets and this would not be the most expensive house that any of the Defendants['] have built.  Defendants stated they built custom homes to each customer's desires." *See id.*

73.     The FAC filed in the Action alleges as follows:  "Defendants' advertisement sign situated on a vacant Anthem neighborhood lot depicted the 'Glen Abbey' house design with a certain price, despite the fact that Defendant was aware that such design could not be built on said lot.  Defendant's agent arranged a meeting with Plaintiff to discuss construction of this design on that specific lot, despite knowledge that it could not be done.  Plaintiff relied upon these representations in beginning discussions with Defendant's agent to meet with Defendant Jenny Blalock.  After tricking Plaintiff into meeting with her, she sold her other services to him." *See id.*, ¶ 41.

74.     The FAC filed in the Action alleges that on or around May 20, 2016, the Underlying Defendants "falsely told Plaintiff that he was not permitted to move into the home and that Defendant Jenny Blalock could and would not provide the certificate of occupancy until Plaintiff paid Defendants in full, including, all of Defendants' overages that were disputed by Plaintiff." *See id.*, ¶ 42.

75. The FAC filed in the Action alleges that the Underlying Defendants "were aware such representations were false and they were made to induce Plaintiff into paying them and entering into the Contract and/or paying Defendants." *See id.*, ¶ 43.

76. The FAC filed in the Action alleges that Wilson relied on the statements made by the Underlying Defendants. *See id.*, ¶ 44.

77. The FAC filed in the Action alleges that the Underlying Defendants negligently supplied false information to Wilson including in regard to those items addressed in Paragraphs 40 through 42 and that the Underlying Defendants subsequently failed to deliver on the agreement after Wilson made a good faith effort to allow the Underlying Defendants to correct their mistakes by making good on the promises made in Agreement. *See id.*, ¶ 45.

78. The FAC filed in the Action alleges that Wilson justifiably relied upon the Underlying Defendants' false information and has been damaged by that reliance. *See id.*, ¶ 46.

79. The FAC filed in the Action alleges that the Underlying Defendants made intentional misrepresentations with regard to their expertise and experience in the performance of the Agreement entered into with Wilson and that these statements were designed and intended to mislead Wilson as to the Underlying Defendants' intentions of performing under the Agreement. *See id.*, ¶ 48.

80. The FAC filed in the Action alleges that these representations were false when they were made. *See id.*, ¶ 49.

81. The FAC filed in the Action alleges that these misrepresentations were made by the Underlying Defendants with knowledge of their falsity and with the intent to deceive Wilson. *See id.*, ¶ 50.

82.     The FAC filed in the Action alleges that the Underlying Defendants' misrepresentations were to an existing fact as set forth in the FAC. *See id.*, ¶ 51.

83.     The FAC filed in the Action alleges that "Defendant's misrepresentations were material to Plaintiff's decision to enter into a contract with any pay money to Defendants." *See id.*, ¶ 52.

84.     The FAC filed in the Action alleges that Wilson reasonably relied upon these misrepresentations to his injury. *See id.*, ¶ 53.

85.     The FAC filed in the Action alleges that the Underlying Defendants breached their duties to exercise reasonable care in the construction of Wilson's home and to construct the home in a manner consistent with reasonable standards of good workmanship and in compliance with the plans, development requirements, and specifications. *See id.*, ¶ 55.

86.     The FAC filed in the Action alleges that Wilson incurred damages in the form of monetary loss, increased costs of construction, decreased property value, costs of repair and increased demands on his time. *See id.*, ¶ 56.

87.     The FAC filed in the Action alleges that "Defendant was negligent in the construction of the property." *See id.*, ¶ 57.

88.     The FAC filed in the Action alleges that the Underlying Defendants engaged in a variety of unfair and deceptive acts in violation of the Tennessee Consumer Protection Act, specifically those acts alleged in Paragraph 64, subparagraphs a. through e. of the FAC. Those allegations are incorporated into this Complaint by reference as stated verbatim in the FAC. *See id.*, ¶ 64.

89.     The FAC filed in the Action alleges that the Underlying Defendants breached the Agreement by failing to complete construction by the appropriate end date set in the Agreement

3812346.5

and by constructing a house with certain systems inoperable or otherwise not in good working order as alleged in Paragraph 32 of the FAC. *See id.*, ¶¶ 67-68.

90.     The FAC filed in the Action alleges that the Underlying Defendants breached the Agreement by deviating from the plans and specifications which resulted in diminishing the value of Wilson's home. *See id.*, ¶ 69.

91.     The FAC filed in the Action alleges that the Underlying Defendants breached the Agreement by failing to construct portions of the home in compliance with building and/or electrical codes, the use of unlicensed contractors, and the use of subcontractors in violation of the OSHA technical manual. *See id.*, ¶ 70.

92.     The FAC filed in the Action alleges that Defendant Jenny Blalock breached the Agreement by refusing to honor an Agreement to deduct certain apartment rent and sales tax for the kitchen island in exchange for early payment. *See id.*, ¶ 71.

93.     The FAC filed in the Action alleges that the Underlying Defendants failed to complete the work on the property in a workmanlike manner. *See id.*, ¶ 72.

94.     The FAC filed in the Action alleges that the home constructed by the Underlying Defendants and conveyed to Wilson contains defects as listed in the FAC which detract from the value of the home. *See id.*, ¶ 73.

95.     The FAC filed in the Action alleges that the Underlying Defendants breached the Agreement by deviating from the plans, depictions, and specifications for the home and by reducing the quality and value of Wilson's home, as set forth in the FAC. *See id.*, ¶ 74.

96.     The FAC filed in the Action alleges that the Underlying Defendants did not keep the hard costs at budget as set forth in the Agreement. *See id.*, ¶ 75.

3812346.5

97.     The FAC filed in the Action alleges that the Underlying Defendants exceeded the purchase price without a change order or authorization.  *See id.*, ¶ 76.

98.     The FAC filed in the Action alleges that the Underlying Defendants did not construct the home according to the construction documents, allowances, finish schedules, addenda, change orders, modifications, and specifications as set forth in the Agreement.  *See id.*, ¶ 77.

99.     The FAC filed in the Action alleges that Wilson's attorney sent a notice of curable breaches of the Agreement to Luxe Homes.  *See id.*, ¶ 78.

100.    The FAC filed in the Action alleges that Wilson has allegedly suffered damages from the Underlying Defendants' alleged breach of contract in the amount of $400,000.00.  *See id.*, ¶ 79.

101.    The FAC filed in the Action alleges that the Underlying Defendants refused to complete work and/or deliver work in a workmanlike manner.  *See id.*, ¶ 84.

102.    The FAC filed in the Action brings claims against the Underlying Defendants on a theory of quantum meruit.  *See id.*, ¶¶ 81-86.

103.    The FAC filed in the Action alleges that Wilson is entitled to $400,000.00 on a theory of quantum meruit.  *See id.*, ¶ 86.

104.    The FAC filed in the Action seeks to pierce the corporate veil and impose liability upon Jenny Blalock and Jim Blalock for the liabilities of Luxe Home and non-party Plantation Reclaimed, Inc.  *See id.*, ¶ 88.

105.    The FAC filed in the Action alleges that the Underlying Defendants have "willfully disregarded the corporate forms" of Luxe Homes and non-party Plantation Reclaimed, Inc.  *See id.*, ¶ 89.

106. The FAC filed in the Action alleges that the Underlying Defendants are liable to Wilson for conversion for double charging Wilson for the cost of plans used for the home and for refusing to return the house plans. *See id.*, ¶¶ 92-94.

107. The FAC filed in the Action alleges that the Underlying Defendants are liable for punitive damages as follows: "deviations from the plans and specifications were intentional and fraudulent, with Defendants possessing the conscious objective to deny and deprive Plaintiff of the quality home which Defendants had contracted to provide and to profit directly from the costs savings achieved thereby. In the alternative, Defendants' deviations from the plans and specifications reflect that Defendants acted with recklessness, because they were aware of, but consciously disregarded, the fact that Plaintiff had contracted for the construction of a home containing stated features and qualities, which Defendants had agreed to construct and provide, and yet Defendants substantially and unjustifiably ignored, disregarded and deviated from those plans and specifications in the construction of Plaintiff's home in order to benefit themselves at Plaintiff's detriment." *See id.*, ¶ 96.

108. The FAC filed in the Action seeks a judgment on behalf of Wilson against the Underlying Defendants for damages suffered in an amount of at least $400,000.00. *See id.*, Prayer for Relief, ¶ 2.

109. The FAC filed in the Action also seeks treble damages, attorney's fees and expenses, punitive damages, and general relief. *See id.*, Prayer for Relief, ¶¶ 3-6.

110. Luxe Homes, Jenny Blalock, and James Blalock requested that Auto-Owners provide a defense for them for the claims made in the Action pursuant to the Policies.

111. Auto-Owners agreed to provide a defense for Luxe Homes, Jenny Blalock, and James Blalock, in the Action subject to a reservation of rights, which included, but was not

3812346.5

limited to, the right of Auto-Owners to file a declaratory judgment action to determine whether the Policies issued to Luxe Homes provided coverage for the claims made in the Action by Wilson.

112.   The Policies do not provide coverage for the claims made in the Action by Wilson against Luxe Homes, Jenny Blalock, or James Blalock.

113.   Because Wilson has put the Property to its intended use as a home and residence, the alleged damage to the Property as set forth in the FAC filed in the Action falls within the "products-completed operations hazard" as defined in the Policies.

114.   The alleged damage to the Property falls within the "products-completed operations hazard" as defined in the Policies.

115.   Exclusion 2.l of the Polices excludes coverage for the alleged damage to the Property set forth in in the FAC filed in the Action.

116.   Exclusion 2.l of the Policies excludes coverage for the claims of breach of express warranties, breach of implied warranties, negligence, breach of contract, quantum meruit, and punitive damages.

117.   The Policies do not provide coverage for the claims of negligent misrepresentation, fraudulent misrepresentation, conversion, quantum meruit, piercing the corporate veil, and violation of the Tennessee Consumer Protection Act as these claims do not meet the definition of "occurrence" as outlined in the Policies.

118.   The Policies do not provide coverage for the claims of negligent misrepresentation or fraudulent misrepresentation as both claims rely upon intentional misrepresentation and Wilson alleges that Underlying Defendants "were aware such representations were false" at the time "when they were made."  *See* FAC, ¶¶ 43, 49.

3812346.5

119.     The FAC filed in the Action alleges that Underlying Defendants made said false representations "to induce Plaintiff [Wilson] into paying them and entering into the Contract and/or paying [Underlying] Defendants…." *See id.*, ¶ 43.

120.     The expected/intended exclusion in the Policies excludes coverage for the claims of negligent and fraudulent misrepresentation, conversion, violation of the Tennessee Consumer Protection Act, and punitive damages based on the allegations made in the FAC filed in the Action.

121.     The Policies do not provide coverage for any damages sought in the Action that do not constitute "property damage" or "bodily injury" as those terms are defined in the Policies.

122.     To the extent applicable and in the alternative, exclusions 2.j(6) and 2.j(7) may apply to exclude coverage for the claims made in the FAC.

123.     The Policies do not provide coverage for the claim for piercing the corporate veil as the damages sought do not constitute covered "property damage" or "bodily injury," are outside the scope of the coverage of the Policies, or are excluded from coverage by the terms of the Policies.

124.     The Policies do not provide coverage for the claims of negligent misrepresentation, fraudulent misrepresentation, conversion, quantum meruit, violation of the Tennessee Consumer Protection Act, and punitive damages as none of the allegations made in the claims assert a claim for "property damage" as the term is defined in the Policies.

125.     The Policies do not provide coverage for claims related to the alleged publication of photographs of the Property as they are excluded by the expected/intended exclusion in the Policies.

3812346.5

126.     The Policies do not provide coverage for claims related to the alleged publication of photographs of the Property as they are excluded by the "arising out of a breach of contract" exclusion in the Policies.

127.     The Policies do not provide coverage for claims related to the alleged publication of photographs of the Property as they are excluded by exclusions 2.i and 2.k in Coverage B. Personal Injury and Advertising Injury Liability.

128.     The Policies do not provide coverage for claims related to the alleged publication of photographs of the Property as any claims arising out of the alleged publication of the photographs are excluded by the Exclusion – Access or Disclosure of Confidential or Personal Information and Data-related Liability – With Limited Bodily Injury Exception in the 2016 Policy.

129.     The Policies do not provide coverage for claims related to the alleged publication of photographs of the Property as the allegations do not meet the definition of "advertising injury" or "personal injury" as defined by the Policies.

130.     The Policies do not provide coverage for claims related to the alleged publication of photographs of the Property as the claims do not involve actions by Luxe Homes, Jenny Blalock, or James Blalock but instead make allegations regarding the posting of certain photographs by non-party Plantation Reclaimed, Inc.

131.     The Policies do not provide coverage for claims related to the alleged publication of photographs of the Property as the claims do not satisfy the definition of an "advertisement" as defined in the Policies.

132.     The Policies do not provide coverage to Luxe Homes, Jenny Blalock, or James Blalock, for the claims made in the Action.

133.    A review of the terms of the Policies as well as the allegations of the FAC filed in the Action establishes that Auto-Owners does not have any duty to defend Luxe Homes, Jenny Blalock, or James Blalock in the Action.

134.    A review of the terms of the Policies as well as the allegations of the FAC filed in the Action establishes that Auto-Owners does not have any duty to indemnify Luxe Homes, Jenny Blalock,  or James Blalock, for any judgment entered against them in the Action.

135.    Luxe Homes is a proper party to this declaratory judgment action because it is the named insured on the Policies and this action will determine whether it has insurance coverage under the Policies for the claims made in the Action.

136.    Jenny Blalock is a proper party to this declaratory judgment action because she is a potential insured pursuant to the Policies and this action will determine whether she has insurance coverage under the Policies for the claims made in the Action.

137.    James Blalock is a proper party to this declaratory judgment action because he is a potential insured pursuant to the Policies and this action will determine whether he has insurance coverage under the Policies for the claims made in the Action.

138.    Wilson is a proper party to this declaratory judgment action because he, as plaintiff in the Action, has an interest in whether Luxe Homes, Jenny Blalock, or James Blalock has insurance coverage to pay any judgment that may be entered in the Action in favor of Wilson.

139.    Neither Auto-Owners nor any of the Defendants have sought, by any other legal action to have their respective rights adjudicated under the facts and circumstances presented herein.

WHEREFORE, Auto-Owners prays:

31

(a)     That service of process be issued and served upon the Defendants listed above;

(b)     That this Court enter an Order declaring Auto-Owners does not have any duty or obligation to defend Luxe Homes, Jenny Blalock, or James Blalock in the Action;

(c)     That this Court enter an Order declaring that Auto-Owners does not have any duty or obligation to indemnify Luxe Homes, Jenny Blalock, or James Blalock, for any judgment entered against them in the Action;

(d)     That this Court enter an Order declaring that the Policies do not provide insurance coverage to Luxe Homes, Jenny Blalock, or James Blalock for the claims and damages alleged in the Action; and

(e)     For such other relief as the Court deems equitable and necessary under the circumstances, and for the costs of this cause.

Respectfully submitted this the 17th day of July, 2017.

WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER, PLLC


By:*s/*Dean T. Howell_____
        Howard E. Jarvis, Esq. BPR #006673
        Dean T. Howell, Esq., BPR #022130
        April A. Carr, Esq., BPR #029092

Post Office Box 900
Knoxville, Tennessee 37901-0900
Telephone: (865) 215-1000
Facsimile:  (865) 215-1001

*Attorneys for Plaintiff Auto-Owners Insurance Company*