186-50

IN THE CHANCERY COURT

FOR KNOX COUNTY, TENNESSEE    2016 SEP -2 AM 10:49

| | |
|---|---|
| 333419    Felon R. Wilson, individually; <br><br>            Plaintiff, <br><br> 333420    v. <br><br> 1333421    Luxe Homes and Design Inc., a Tennessee <br> 1333422    Corporation; Plantation, <br>            Reclaimed Inc., a Tennessee Corporation; <br> 1136260    Jenny Blalock, individually, and James <br> 1333423    Blalock, individually; <br><br>            Defendants. | No. <br> COMPLAINT    192292-3 <br> JURY DEMANDED |

Plaintiff Felon R. Wilson alleges as follows:

## PARTIES AND JURISDICTION

1. Felon R. Wilson ("Plaintiff") is an individual resident of Knoxville, Knox County, Tennessee, residing at 7203 Iron Duke Way Knoxville, TN 37919.

2. Defendant Luxe Homes and Design Inc. is ("Luxe") a corporation authorized to do business in the State of Tennessee, duly incorporated and chartered under the laws of the State of Tennessee, doing business under the name of Luxe Homes and Design Inc. with its principal place of business at 1122 Anthem View Lane, Knoxville, Knox County, Tennessee.

3. Defendant Plantation Reclaimed Inc. is ("Plantation Reclaimed"), upon information and belief, a corporation authorized to do business in the State of Tennessee, duly incorporated and chartered under the laws of the State of Tennessee, doing business under the name of Plantation Reclaimed Inc. with its principal place of business at 1122 Anthem View Lane, Knoxville, Knox County, Tennessee.



1

Case 3:17-cv-00301-TWP-HBG   Document 1-4   Filed 07/17/17   Page 1 of 18   PageID #: 200

4. Defendant Jenny Blalock is an individual resident of Knoxville, Knox County, Tennessee, residing at 1122 Anthem View Lane, Knoxville, Tennessee.

5. Defendant James M. Blalock (also known as "Jim") is an individual resident of Knoxville, Knox County, Tennessee, residing at 8336 Martin Mill Pike, Knoxville, TN.

6. This Court has jurisdiction over this matter pursuant to Tenn. Code Ann. § 16-10-101. Venue is proper pursuant to Tenn. Code Ann. § 20-4-101, et seq., this being the County in which the real property is located, in which the cause of action arose, and in which both the plaintiff and Defendants reside and/or have their principal place of business.

## ALLEGATIONS

7. That on or about June 1, 2015, Plaintiff entered into a Fixed Fee Construction Agreement with Jenny Blalock of Luxe Home Designs for the construction of a house on the property located at 7203 Iron Duke Way, Knoxville, TN 37919 for the contract price of $615,947. (Copy of Contract is attached as Exhibit 1.). The Contract stated that the estimated completion date would be January 30, 2016. The contract was drafted by Luxe or its attorney. Defendants were aware that time was of the essence for Plaintiff. Plaintiff repeatedly requested a copy of the fully executed contract from Defendant Jenny Blalock, but she either ignored Plaintiff's requests or stated that she would provide the contract, without providing a copy of the executed Contract to Plaintiff.

8. Defendant Jenny Blalock communicated to Plaintiff, performed services, and provided goods to Plaintiff through her companies Luxe and Plantation Reclaimed.

9. Defendants failed to properly communicate with and oversee subcontractors. Further, Defendants failed to demonstrate a basic understanding of certain construction materials and processes.

2

10. On numerous occasions, Defendant Jenny Blalock deviated from the parties' agreement; and/or used cheap construction materials or processes, and demanded that Plaintiff pay her amounts above the fixed fee in the Contract to correct such deviations or to replace the cheap construction materials or processes. Defendant also demanded that Plaintiff pay her amounts above the fixed fee contract due to her failure to properly include such amounts in the Contract price or for work commenced without the approval of Plaintiff. Further, Defendant failed to follow neighborhood covenants or properly calculate the Contract price, forcing Plaintiff to hire third party contractors and incur additional expense.

11. Defendant Jenny Blalock agreed to provide financial information relating to the construction to Plaintiff for his tax returns, but then failed to actually provide such information until Plaintiff submitted numerous requests to Defendant Jenny Blalock. The financial information that Defendant Jenny Blalock finally provided was incomplete.

12. Defendants used unqualified contractors, rather than spending money on qualified contractors for substantial portions of the house, including, but not limited to, Defendant Jenny Blalock and her father, Defendant James Blalock, building portions of the house themselves.

13. Despite Plaintiff's requests to clean the construction site, Defendants maintained the construction site in a sloppy manner, prompting complaints from the neighborhood developer and neighbors. Throughout the construction process and in an effort to increase her profit margins, Defendant tried to convince Plaintiff to substitute agreed-upon materials with cheap building supplies or installed cheap and poor quality building materials without seeking approval of Plaintiff.

3

14. In exchange for early payment, Defendant Jenny Blalock agreed to reduce certain amounts that she claimed that Plaintiff owed her.

15. On or around June 13, 2016, Plaintiff's attorney sent a notice of breach of contract to Defendants.

16. Defendants did not reply to, deny, or dispute any breach of contract claims made by Plaintiff's attorney's notice of breach of contract letter.

17. Plaintiff and Defendants agreed that no pictures of the house were to be used for any advertising or promotion. Defendants then used pictures of the inside of the house in paid advertisements and on the website of Defendant "Plantation Reclaimed."

18. After receiving full payment from Plaintiff, Defendants failed to complete construction of the home and performed only a few one-off projects on the home, even after receiving numerous requests to fix and/or complete the construction and multiple notices from the City of Knoxville regarding building code violations. Plaintiff has made numerous demands upon Defendants for repair of the deficiencies or incompletions which they have found, but Defendants have failed to respond to and refused to remedy the majority of such deficiencies.

19. To date, Plaintiff has discovered, *inter alia*, the following defects with the property, such defects arising due to the construction methods, attempts at repair, and/or materials used by Defendants:

    a. Failure to anchor the gutter, which is detached;

    b. Defendant and her father constructing the porch themselves with left-over poor quality materials that do not match in appearance or consistency to the rest of the

4

house. The back porch door is crooked, has a gap at the top, and should be closable with a knob not a hook.

c. Nails installed around windows inside of the house go through the wall and can be seen outside due to poor installation;

d. Doors to the exterior of the house are not properly sealed causing gaps in weather-stripping and visible light shining through;

e. Improper installation of windows, resulting in crooked windows, windows not being caulked and/or sealed properly; gaps of coverage on exterior sealing; and lack of window sills.

f. Damage to brick and walls, including, but not limited to, scratches, inadequately painted brick (resulting in peeling), and other defects.

g. Installation of garage door panels of different color than the other garage doors;

h. The sewer pipe cleanout is not finished and/or installed correctly, including the fact that its sticking vertically in the air for 4 feet and is not covered with a protective cap.

i. The crawl space door was built with poor workmanship like quality, does not properly fit the home; has air gaps surrounding the door; with a negligently installed latch allowing a person to be locked in the crawl space; was constructed and installed without consideration for being weather tight; and does not meeting neighborhood standards;

j. Loose crawl space vents that are covered in mud.

k. Structural errors and moisture issues.

l. The porch columns are open on top with water seeping with rain;

5

m. Wood inside porch columns was warped when installed;

n. Improper or insufficient amount of sealant on interior and exterior portion of doors;

o. Failure to install materials of quality set forth in the Contract, such as bronze gutters,

p. Knots and cracks on ceiling from wood coming through the paint;

q. Exposed concrete blocks around inside of garage;

r. Steps leading into the house from the garage are unfinished wood. This is standard framing lumber that was salvaged and used for steps instead of professionally manufactured steps.

s. Defendants failed to provide a garage door opener for one of the garage doors.

t. Damage to structure in between the garage doors on the interior. Mortar was splashed on this block to hide the broken block.

u. Throughout the house, the door stops are stuck to the wall as a result of being applied to wet paint.

v. Defendants failed to properly paint and to do proper, if any, finishing to the trim after it was installed.

w. Large portions of the house were either not sanded or insufficiently sanded, leading to rough and unfinished surfaces, including, but not limited to, trim throughout the house.

x. Sheetrock was not sufficiently sanded, mostly sanding at necessary tape joints.

y.  Defendant attempted to repair scratches to wood floors, using a liquid of some sort that further damaged the floors, possibly requiring plaintiff to have to replace the entire wood floor.

z.  Defendants or their contractors attached a blank piece of plastic to the wall as a cheap workaround, instead of properly fixing the sheetrock when they cut too big of a hole for an electrical plug.

aa. The inside trim on widows is inconsistent and not sanded properly.

bb. The kitchen countertops are not professionally sealed, resulting in damage to the countertops from standing water. This is despite the fact that Wilson's paid Blalock an amount in addition to that set forth in the Fixed Fee Agreement to seal these countertops.

cc. Lights in the home were improperly installed, resulting in the lights being crooked, and/or not anchored correctly.

dd. There are cracks in various portions of the ceiling.

ee. Sheetrock was not properly applied to portions of ceiling, resulting in chunks of sheetrock in some areas.

ff. Sheetrock on various walls is not smooth and has lumps in it.

gg. Inoperable plumbing fixtures, including, but not limited to inoperative stoppers on bathroom sinks. Defendants or their contractors installed a temporary workaround pop-up system, but left the inoperative leaver behind the spout in place. In order to save money, Defendants or their contractors installed the cheap workaround, instead of properly fixing the inoperative stoppers. The sinks are not properly

7

Case 3:17-cv-00301-TWP-HBG   Document 1-4   Filed 07/17/17   Page 7 of 18   PageID #: 206

operating. The lever behind the faucet, which is used to lift the stopper in the sink is inaccessible because of the placement being too close to the wall.

hh. The Defendants or their contractors installed at least one inoperative fan switch on the interior wall.

ii. Cheap regular framing lumber was used to create trim for some, if not all portions of the home.

jj. Improper installation of thermostat on exterior wall, resulting in malfunctioning thermostat.

kk. The Defendants or their contractors failed to install an arc fault circuit breaker for the upstairs bedroom;

ll. Piers were incorrectly installed in the back porch area.

mm. Failure to install a second water heater as would be reasonably expected for the size and layout of the home.

nn. The Defendants or their contractors installed an insufficient doorbell system for the size and layout of the home.

oo. Two return air vents were installed in the same end of the house instead of spaced properly.

pp. The wood floors on the stairs are discolored and were finished by Defendants or their contractors with a product different than the other wood floors in the house.

qq. The Contract specifies five tons of cooling for the downstairs and two tons upstairs. The Defendants or their contractors installed four tons downstairs and two and a half tons upstairs.

rr. Bent and damaged soffits were installed on the exterior of the home.

8

ss. The Defendants or their contractors improperly installed the water closet door.

## *CAUSES OF ACTION*

### COUNT I - BREACH OF EXPRESS WARRANTIES

20. All allegations in paragraphs 1 through 19 of this Complaint are hereby incorporated and re-alleged by reference.

21. The Defendants breached the express warranties, which include:

   a. Defendants did not construct the house substantially according to the plans, specifications, and or approved change orders.

   b. The house is not free from defects in workmanship and materials.

   c. The house was not constructed in accordance with applicable building codes.

   d. Defendants did not finish items that were not completed within a reasonable time.

   e. The installation of the HVAC is not free from defects in workmanship

   f. Framing is not in place as specified in the plans.

   g. Roof guttering is unattached.

   h. Cracking has exceeded 1/4 inch.

   i. There are cracks exceeding 1/4 inch in the door.

   j. Drywall defects have not been repaired.

   k. Defendants' did not repair paint.

   l. Defendants or their contractors did not repair switches.

   m. Plaintiff submitted breaches of warranty to Defendants but they failed to cure such breaches.

### COUNT II - BREACH OF IMPLIED WARRANTIES

9

22. All allegations in paragraphs 1 through 20 of this Complaint are hereby incorporated and re-alleged by reference.

23. Defendants' are liable to Plaintiff for breach of the implied warranty of good workmanship as a result of, *inter alia*, Defendants' improper construction and use of poor quality materials.

24. Defendants' are also liable for breach of the implied warranty of habitability and fitness as a result of, *inter alia*, Defendants' improper construction and use of poor quality materials.

25. The Plaintiff has been damaged by the defendants' breach of the implied warranties and continues to sustain damages, including but not limited to, property damage and diminution of the value of the home.

## COUNT III - NEGLIGENT MISREPRESENTATION

26. All allegations in paragraphs 1 through 25 of this Complaint are hereby incorporated and re-alleged by reference.

27. Defendants represented to the Plaintiff that they were experienced as general contractors, Defendants were the finest custom homebuilder in Knoxville, and Defendants build only high-end and high-quality custom construction. Defendants represented to the Plaintiff that Defendants built only high-end homes and used the best subcontractors and materials. In addition, Defendants represented to the Plaintiff that Defendants' homes always appraise for more after completion than the customers' purchase price. Further, Defendants' stated that they had expertise in the management of money, budgets and meeting construction deadlines. Defendants' stated that they frequently build custom-

10

houses within customers' budgets and this would not be the most expensive house that any of the Defendants' have built.

28. Further, Defendants' advertisement sign situated on a vacant Anthem neighborhood lot depicted the "Glen Abbey" house design adjacent to a certain price, despite the fact that Defendant was aware that such design could not be built on said lot. Defendant's agent arranged a meeting with Plaintiff to discuss construction of this design on that specific lot, despite knowledge that it could not be done. Plaintiff relied upon these representations.

29. On or around May 20, 2016, Defendants, knowing Plaintiff's time and financial constraints, falsely told Plaintiff that he was not permitted to move into the home and that Defendant Jenny Blalock could and would not provide the certificate of occupancy until Plaintiff paid Defendants in full, including, all of Defendants' overages that were disputed by Plaintiff.

30. Defendants were aware such representations were false and they were made to induce Plaintiff into paying them and entering into the Contract and/or paying Defendants as set forth in this Complaint.

31. Plaintiff relied on these statements made by Defendants.

32. Accordingly, as set forth herein, Defendants, who had a pecuniary interest in the Contract, negligently supplied false information to Plaintiff regarding those items set forth in paragraphs 27 and 31. Then, Defendants subsequently failed to deliver on the Contract after the Plaintiff made a good faith effort to allow Defendants to correct its mistakes by making good on the contractual promises by which it was bound.

33. Plaintiff justifiably relied upon Defendants' false information and has been damaged by that reliance.

## COUNT IV- FRAUDULENT MISREPRESENTATION

34. All allegations in paragraph 1 through 33 of this Complaint are hereby incorporated and re-alleged by reference.

35. Defendants made intentional misrepresentations with regard to their expertise and experience and the performance of the Contract entered into with Plaintiff. These statements were designed and intended to mislead the Plaintiff as to Defendants' intentions of performing under the contract.

36. These representations were false when they were made.

37. These misrepresentations were made by Defendants with knowledge of their falsity and with the intent to deceive the Plaintiff.

38. The Defendants' misrepresentations were to an existing fact as set forth in Count III and this Complaint and Defendants' intention of performing its obligations under the Contract.

39. The Defendant's misrepresentations were material to Plaintiff's decision to enter into a contract with any pay money to Defendants.

40. Plaintiff reasonably relied upon these misrepresentations to his injury.

## COUNT V - NEGLIGENCE

41. All allegations in paragraphs 1 through 40 of this Complaint are hereby incorporated and re-alleged by reference.

42. Defendants owed Plaintiff a duty to exercise reasonable care in the construction of Plaintiff's home. More specifically, Defendants owed Plaintiff a duty to construct the

12

home in a manner consistent with reasonable standards of good workmanship and in compliance with the plans, developer requirements, and specifications. As described in this Complaint, Defendants have breached such duties owed to Plaintiff.

43. Plaintiff has, as a direct and proximate result of such breach(es), sustained damages in the forms of monetary loss, increased costs of construction, decreased property value, costs of repair and increased demands on Plaintiff's time insofar as Plaintiff has been required to effectuate completion of construction.

44. Accordingly, Defendant was negligent in the construction of the property.

45. Plaintiff has suffered damages from Defendants' negligence in an amount estimated to be not less than Three Hundred Thousand and 00/100 Dollars ($300,000.00), which sum shall be specifically proven at trial.

## COUNT VI - CONSUMER PROTECTION ACT

46. All allegations in paragraphs 1 through 45 of this Complaint are hereby incorporated and re-alleged by reference.

47. Plaintiff is consumers as defined by Tenn. Code. Ann. § 47-18-103(2).

48. The acts of the Defendants described in this Complaint constitute an unfair and deceptive practice in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq. Defendants' wrongful acts were committed willfully and knowingly, thereby entitling plaintiff to a recovery of treble their actual damages and recovery of their reasonable attorney's fees and costs.

## COUNT VII - BREACH OF CONTRACT

49. All allegations in paragraphs 1 through 48 of this Complaint are hereby incorporated and re-alleged by reference.

13

50. Defendants failed to complete construction by the approximate end date set forth in the Contract. Defendants were aware that time was of the essence because of Plaintiff's costs and time constraints.

51. Under the Contract, all systems shall be in good working order. Numerous systems are inoperable or otherwise not in good working order, including, but not limited to Paragraph 19 above.

52. Defendants deviated from the plans and specifications, thereby saving themselves the expense associated with complying with the plans and specifications, and reducing the quality and value of plaintiff's home, and all of the ways described in this Complaint, thereby diminishing the value of plaintiff's home.

53. The Contract required that Defendant's comply with applicable national, state, and laws. Defendants following actions or work failed to comply with such laws, including:

    a. Portions of the home were built in violation of building and/or electrical codes;

    b. Defendants' utilized unlicensed contractors; and

    c. Defendant's subcontractors violated Section 5 Chapter 2 of the OSHA Technical Manual.

54. Defendant Jenny Blalock agreed to deduct certain apartment rent and the sales tax for the kitchen island (which Defendant claimed that she forgot to budget in the Contract) in exchange for early payment. Defendant refused to honor this agreement after Plaintiff performed his obligation under this Agreement.

55. Defendants failed to complete the work in a workman like manner as set forth in in this this Complaint.

14

Case 3:17-cv-00301-TWP-HBG   Document 1-4   Filed 07/17/17   Page 14 of 18   PageID #: 213

56. The home constructed by Defendants and conveyed to plaintiff contains the defects listed in this Complaint, all of which materially detract from its value.

57. Defendants also contracted in the Contract to construct the home in accordance with the plans, depictions, and specifications. Defendants deviated from the plans, depictions and specifications, thereby saving themselves the expense associated with complying with the plans and specifications, and reducing the quality and value of plaintiff's home, and all of the ways described in this Complaint, thereby diminishing the value of plaintiff's home.

58. Defendants did not keep the hard costs at budget as set forth in the Contract.

59. Defendants exceeded the purchase price without a change order or authorization.

60. Defendant did not construct the home according to the construction documents, allowances, finish schedules, all addenda, change orders, modifications and specifications set forth in Exhibit A to the Contract.

61. In accordance with the Contract, Plaintiff's attorney sent notice of curable breaches of the Contract to Luxe by certified mail and email.

62. Plaintiff has suffered damages from Defendants' breach of contract in an amount estimated to be at least Three Hundred Thousand and 00/100 Dollars ($300,000.00), which sum shall be specifically proven at trial.

## COUNT VIII - QUANTUM MERIUT

63. All allegations in Paragraph 1 - 61 of this Complaint are hereby incorporated and re-alleged by reference.

15

64. In the alternative of finding no contract between Plaintiff and any of the Defendants, Plaintiff asserts that there is no contract between Plaintiff and such Defendants regarding some or all of the subject matter set forth herein.

65. Plaintiff paid high amounts of money for the goods and services.

66. Defendants received such money knowing that it was for the goods and services in this Complaint.

67. Defendants refused to complete such work and/or deliver work in a workmanlike manner.

68. It would be unjust for Defendants to retain the payments made by Plaintiff.

69. The value of the payments provide by Plaintiff shall be proved at trial, but are not less than Three Hundred Thousand and 00/100 Dollars ($300,000.00) plus interest, costs, and fees.

## COUNT IX - PUNITIVE DAMAGES

70. All allegations in Paragraph 1 - 69 of this Complaint are hereby incorporated and re-alleged by reference.

71. Defendants' deviations from the plans and specifications were intentional and fraudulent, with Defendants possessing the conscious objective to deny and deprive Plaintiff of the quality home which they had contracted to purchase and which Defendants had contracted to provide and to profit directly from the cost savings achieved thereby. In the alternative, Defendants' deviations from the plans and specifications reflect that Defendants acted with recklessness, because they were aware of, but consciously disregarded, the fact that Plaintiff had contracted for the construction of a home containing stated features and qualities, which Defendants had agreed to construct and provide, and yet Defendants substantially and unjustifiably ignored, disregarded and

16

deviated from those plans and specifications in the construction of Plaintiffs' home in order to benefit themselves at Plaintiff's detriment. Accordingly, Defendants' conduct justifies an award of punitive damages in an amount which shall be established at trial.

WHEREFORE, PREMISES CONSIDERED, Felon R. Wilson prays as follows:

1. That process issue and be served upon Defendants Luxe Homes and Design Inc., Plantation, Reclaimed Inc., Jenny Blalock, and James Blalock, and that they be required to answer this Complaint within the time allowed by law.

2. That upon a trial of this cause, Plaintiffs have and recover a judgment against Defendants for the full amount of damages they have suffered, including but not limited to the cost of repairing construction deficiencies and the greater of the loss of value or cost savings occasioned by Defendants' deviations from the plans and specifications which cannot practically be repaired, in an amount estimated to be at least Three Hundred Thousand and 00/100 Dollars ($300,000.00), which shall be more specifically proven at trial.

3. That Plaintiff's actual damages be trebled.

4. That Plaintiff has and recovers a judgment for their attorney's fees and expenses of this litigation as provided in the written contract between the parties.

5. That Plaintiff has and recovers a judgment for punitive damages against the Defendants by reason of their intentional, fraudulent and reckless conduct which has caused Plaintiffs substantial damages.

6. For such other, further and general relief to which Plaintiffs may be entitled. Plaintiff respectfully demands a jury.

DATED: August 26, 2016

                        STOEL RIVES LLP

                        By: *[signature]*
                        WILLIAM F. WILSON
                        Tenn. BPR No. 032440
                        (503) 294-9189
                        william.wilson@stoel.com
                        760 SW Ninth Avenue, Suite 3000
                        Portland, OR 97205
                        Attorney for Plaintiff
                        Felon R. Wilson